UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
|  | CV 09-320 CAS (MANx) |  |  |
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.* | | |
|  | *Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Christine Spagnoli

Attorneys Present for Defendants:

Brian Stewart
Erica Fisher
Mark Williams
Geoffrey Brown

Cross Defendant:
John Jones II

**Proceedings:**      **Motion for Good Faith Settlement** (filed 5/13/2009)

## I.      INTRODUCTION AND BACKGROUND

### A.      CV 08-5790-CAS: The Hong Action

Plaintiff Seung Suk Hong, individually and as successor in interest, filed a complaint in Los Angeles County Superior Court on May 14, 2008.  This action, Case No. CV 08-5780-CAS ("the Hong action"), was timely removed on September 4, 2008. On October 28, 2008, Hong filed a first amended complaint ("FAC") against defendants Sang Mook Lee ("Professor Lee"), Eun Seo Choi ("Choi"), California Institute of Technology ("Caltech"), Ford Motor Company ("Ford"), Republic of Korea, Quigley Motor Company ("Quigley"), and Does 1-150, inclusive.  Hong's FAC alleges that she is the surviving heir and mother of decedent Hye Jung Lee ("decedent").  FAC ¶ 1.  Hong alleges that on or about July 2, 2006, decedent was a passenger in a Ford E-350 van driven by defendant Professor Lee, with the express or implied permission of defendants Caltech, Republic of Korea, and Does 1-150, to transport Seoul National University students on a field trip in San Luis Obispo County.  FAC ¶ 15.  Hong alleges that the vehicle in which decedent was riding was in a collision that proximately caused

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|----------|-----------------------------------------------|------|---------------|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

decedent's death.  SAC ¶ 17.  Hong asserts claims for (1) negligence (against defendants Professor Lee, Choi, Caltech, and Republic of Korea); (2) negligent entrustment (against defendants Caltech and Republic of Korea); (3) products liability negligence (against defendants Ford, Quigley, and Does 1-150); (4) products liability implied warranty (against defendants Ford, Quigley, and Does 1-150); and (5) products liability strict liability (against defendants Ford, Quigley, and Does 1-150).[1] [2]

### B.    The Lee Action

On December 12, 2006, Professor Lee, who is a defendant in the Hong action, along with his spouse Hee-Jung Kim, (collectively referred to as the "Lee plaintiffs") filed a complaint in Los Angeles County Superior Court against defendants Caltech, Ford, Quigley, and Does 1-100.  The Lee plaintiffs subsequently filed a FAC.  On January 14, 2009, this action, CV09-320-CAS (the "Lee action"), was removed to this Court.  The Lee plaintiffs allege that Professor Lee suffered severe and permanent injuries as a result of the automobile accident also at issue in the Hong action, which resulted in paralysis.  FAC ¶ 17.  The Lee plaintiffs assert claims for (1) negligence (against Caltech and Does 1-100); (2) strict products liability (against Ford, Quigley, and Does 1-100); (3) negligence (against Ford, Quigley, and Does 1-100); and (4) breach of express and implied warranties (against Ford, Quigley, and Does 1-100).

Caltech filed a cross-claim against Quigley, Professor Lee, Republic of Korea, and Zoes 1-10 on March 26, 2009, asserting claims for 1) total equitable indemnity (against all cross-defendants); (2) comparative indemnity/contribution (against all cross-defendants); (3) declaratory relief (against all cross-defendants); and (4) negligence

---

[1] Subsequently, Caltech, Republic of Korea, and Quigley filed cross-claims against various parties in this action.  Because, as described below, it appears that the Hong action will settle in its entirety and is no longer at issue in this motion, the Court need not detail the full procedural history of these cross-claims.

[2] On September 15, 2008, the Court dismissed Doe defendants 11-150.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

(against all cross-defendants).[3]

### C.    The Instant Motion

On May 13, 2009, Quigley filed the instant motion for good faith settlement in both the Hong action and the Lee action.  Caltech filed an opposition on May 25, 2009.  All other parties have stipulated to the good faith settlement.  Defendant Republic of Korea filed a notice of non-opposition on May 26, 2009.  Defendant Ford filed a notice of non-opposition on May 27, 2009.  Professor Lee filed a notice of non-opposition on May 29, 2009.  Quigley, Ford, and the Lee plaintiffs filed replies on June 1, 2009.

On June 3, 2009, plaintiff filed a notice that the parties in the Hong action have reached a global settlement.  The Court therefore considers herein Quigley's motion and Caltech's opposition only to the extent that it pertains to the Lee action.

A hearing was held on June 8, 2009, at which the Court stated that it could not approve Quigley's motion, because the record was insufficient to allow the Court to make a finding of good faith.  The Court therefore requested further briefing from the parties.  On June 15, 2009, Quigley filed a supplemental motion.  On June 18, 2009, Caltech filed a response.  Quigley's motion for good faith settlement is currently before the Court.

## II.    LEGAL STANDARD

---

[3] With regard to Caltech's negligence claim against Quigley, Caltech alleges that "Quigley and Zoes 1-10 have supplied, designed, manufactured, altered, and placed into the stream of commerce the subject van which was not free from defects nor fit for the purpose for which it was to be used and was, in fact, defectively manufactured and designed and was capable of causing, and allegedly did cause severe fatal injuries to the users and consumers thereof while being used in a manner reasonably foreseeable thereby rendering same unsafe and dangerous for use by the consumers, users and/or bystanders." Cross-Claim ¶ 63.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx) | Date | June 22, 2009 |
| | CV 09-320 CAS (MANx) | | |
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.* | | |
| | *Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

In determining whether a settlement was entered into in good faith for the purposes of Cal. Code Civ. P. § 877.6, courts are to consider several factors, including "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal. 3d 488, 499 (1985). Other relevant considerations include "the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." Id.

## III. DISCUSSION

Under the terms of the proposed settlement submitted by Quigley, Quigley would pay a total of $825,000 to the Lee plaintiffs in full satisfaction of the claims against Quigley. The settlement is contingent upon the Court "discharging with prejudice and forever barring any and all claims against Quigly Motor Company for equitable indemnity, contribution, and declaratory relief."[4] Settlement Agreement at 2.

### A. Quigley's Proportionate Liability

Quigley first argues that the settlement should be approved, because the evidence indicates that Quigley would bear no liability for the Lee plaintiffs' claims of strict product liability, negligence, and breach of express and implied warranties.

Quigley is a defendant in this action due to its role as the installer of the four-wheel drive system on the Ford E-350 vans that were purchased by Caltech and involved in the

[4] To the extent that Caltech seeks damages resulting from Caltech's lost of the subject van in this action, Quigley states that this is an independent claim founded upon Caltech's status as a property owner, and therefore would not be discharged by settlement; however, Quigley argues that this claim is more properly the subject of a small claims court action. Mot. at 8. Nevertheless, the Court finds that this claim is not affected by the instant decision, and declines to address the disposition of this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
| | CV 09-320 CAS (MANx) | | |
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.* | | |
| | *Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

car accident that caused Professor Lee's injuries.  Quigley argues that the 4x4 conversions it performed on the E-350 vans were not defective, and did not cause the accident or plaintiff's injuries.  Mot. at 17.   First, Quigley argues that the van being driven by Professor Lee was not in four-wheel drive mode, and that therefore, nobody relied upon the Quigley 4x4 system for traction or power in relation to the accident.  Mot. at 17, citing Declaration of Michael Quigley (Quigley Dec.) ¶ 7.[5]  Furthermore, Quigley argues that the warranty sued upon was issued in 1998 and was expressly made subject to a 24,000 mile/24 month term.  Mot. at 17, citing Ex. 9 (Quigley Warranty).  Therefore, Quigley argues, Caltech may not rely on an express warranty theory where the warranty expired six years before the accident.  Mot. at 17.  In addition, Quigley argues that "[a]t an early meeting of counsel, Ford's counsel represented to all other counsel that Ford does not contend the weight of the Quigley modifications contributed to or caused the roof crush experienced by the accident van, and plaintiffs' counsel represented that it was likely that she would proceed against Ford on a roof crush theory."  Mot. at 9; Decl. of Mark M. Williams ¶ 6.

Quigley further argues that, even if plaintiffs were able to prove Quigley's liability, the settlement roughly approximates it proportionate share of liability, and that Caltech's liability is much greater than Quigley's.

First, Quigley argues that Caltech made several vehicle modifications after purchasing the Quigley-equipped Ford E-350 van involved in the accident; Quigley argues that such modifications were made without consulting Ford and in express contravention to the Quigley warranty.  Mot. at 10, citing Quigley Decl. ¶ 6.[6]  In

---

[5] Michael Quigley, who is president of Quigley, states that he has twice inspected the Ford E-350 van driven by Professor Lee, and has determined, based upon the configuration of the front wheel locking hubs, that the van driven by Professor Lee was in two-wheel drive mode.  Quigley Decl. ¶ 7.  Caltech objects to this statement on the basis that it is calls for expert opinion.  Caltech's Objections to Quigley's Evidence ¶ 4.

[6] Michael Quigley states that in inspecting the van after the accident, he personally observed that such modifications had been made, and states that based upon his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|----------|-----------------------------------------------|------|---------------|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

particular, Quigley argues that Caltech added larger tires to the van, removed and repositioned seats, and modified the driver's front seat belt assembly. Mot. at 10; Quigley Decl. ¶ 6. Quigley argues that these modifications "raise handling and performance issues with respect to the roll-over event . . ." Mot. at 10. Quigley also argues that additional evidence demonstrates Caltech's disproportionate responsibility for the accident, including the fast-paced schedule of the field trip which likely caused the drivers to become fatigued, and the poor driving skills of Professor Lee and Choi and the failure of Caltech to remove them as drivers. Mot. at 11-13. Quigley argues that therefore, Quigley's exposure to liability would be reduced by the comparative fault of Professor Lee and Caltech.[7] Mot. at 18. Quigley argues that "Caltech had an accident history with the 12-passenger E-350 vans that placed it on actual notice of the need to limit driving access to those who had familiarity with the vans and were experienced in driving the vans. Caltech chose to ignore its established procedures and customs involving access to these vans in favor of allowing a foreign driver (Sang Mook Lee) with no prior experience driving these vehicles to drive . . ." Reply at 13.

_____

experience as a Ford vehicle modifier, "none of these vehicle modifications should have been undertaken without prior Ford Motor Company engineering review, evaluation and approval." Quigley Decl. ¶ 6. Caltech objects to Quigley's statements regarding modifications of the van made by Caltech, on the ground that it is inadmissible hearsay and calls for expert opinion. Caltech's Objections to Quigley's Evidence ¶ 4.

[7] In addition, Quigley also argues that "[e]xperts are looking at whether the following van [driven by Choi] struck the lead van in what would have amounted to an accidental pit maneuver, sending the rear of professor Lee['s] van into a clockwise turn which caused professor Lee to overcorrect to the right, causing the van he drove to roll over." Mot. at 11. Caltech argues that this theory is pure speculation and objects that this evidence cited by Quigley in support of it (the declaration of Mark M. Williams, counsel for Quigley, stating that "the pit maneuver theory is, based on my understanding of the case, a principal theory of how this traffic accident began") is inadmissible hearsay and calls for expert opinion. Caltech Objections to Quigley's Evidence ¶ 1. The Court agrees that these statements in the Williams declaration are speculative, and therefore does not rely on them herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|----------|-----------------------------------------------|------|---------------|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

Quigley also argues that the amount it has offered to the Lee plaintiffs is substantial given the amount the Lee plaintiffs stand to recover. Quigley argues that it has submitted Professor Lee's medical records to Dr. Thomas L. Hedge ("Dr. Hedge") of the Northridge Hospital Medical Center Rehabilitation Medicine Department. Mot. at 18. Dr. Hedge has set forth the opinion that Professor Lee's medically probable life expectancy is 17 years, rather than the 33 years estimated by rehabilitation consultant Carol Hyland, who was retained by the Lee plaintiffs. Mot. at 18. Quigley also notes that the Lee plaintiffs' economic analysis based on a 33-year life expectancy estimates that the cost of medical care and maintenance for Professor Lee from a low of $2,216,602 to a high of $3,020,672, depending on fluctuation of the U.S. Dollar to Korean won. Mot. at 19. Quigley argues that, in fact, under a 1300+ won to U.S. dollar exchange rate, the cost projection is less than $1.5 million. Mot. at 19, citing declaration of Mark M Williams ("[a]s of the date of the preparation of this declaration, the exchange rate between the U.S. dollar and the Korean won is 1,341.8 won to the dollar"). Quigley argues that it also surveyed California verdicts between 2002 and 2007 for paralyzed males between 28 and 67 years of age, and determined that settlements and verdicts ranged from $1.5 million to $16.3 million. Mot. at 20. Quigley argues that it appears that the verdict/settlement range for Professor Lee is fairly between $3.5 million to $5 million for economic and non-economic damages, and that Quigley's settlement contribution is well within its range of exposure, "in a case where professor Lee's comparative fault could range between zero and 50% and where Caltech 's comparative fault (including Eun Seo Choi's fault) could run from 50% on the low side to 80% or greater." Mot. at 20.

Caltech argues, however, that Quigley has underestimated its own liability in this action, and that the settlement amount should therefore be rejected.

First, Caltech argues that the Ford E-350 van has increasingly come under government scrutiny for its tendency to roll at low-speeds. Mot. at 2; Declaration of Nicole Davis Tinkham ¶ 10 (citing National Highway Traffic Safety Administration, "Fatalities to Occupants of 15-Passenger Vans, 2003-2007" (May 2009) http://www-nrd.nhtsa.dot.gov/Pubs/81143.PDF). Caltech notes that there are currently actions pending regarding this tendency to roll, including one consolidated action. See In re Ford Motor Co. E-350 Van Products Liaibility Litigation (No. II), 2008 WL 4126264 (D.N.J.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

2008) ("plaintiffs allege that their Ford E-350 15-passenger vans are defectively designed due to a high center of gravity that leads to an unusually high rollover rate . . .").  Yet, as Quigley notes, the studies cited by Caltech related to 15-passenger vans, rather than the 12-passenger vans at issue her, and, more importantly, none of these studies examined how Quigley's conversion affected the performance of the vans.[8]  See Reply at 12.

Caltech acknowledges that the studies cited do not address Quigley's modifications of passenger vans, but argues that "Quigley's after-market modifications of the 4-wheel drive capability contributed to the tendency to roll by raising the center of gravity and increasing the vehicle weight."  Mot. at 2.  To support this statement, Caltech cites the declaration of Christopher J. Brignola, mechanical engineer, which cites a test of a Ford E-350 van with the Quigley aftermarket 4-wheel drive conversion, as well as a test of a Ford E-350 van without the 4x4 conversion. Brignola states that the center of gravity from the ground is 34.43 inches in the converted van, compared to 32.89 inches for the non-converted van.  Brignola Decl. ¶ 4-5.  In addition, Brignola states that the converted van's weight is 5957 pounds, compared to 5906 pounds for the non-converted van. Brignola Decl. ¶ 4-5.  Brignola states that "the higher the center of gravity the higher the likelihood a vehicle will initiate a rollover event."  Brignola Decl. ¶ 6.  Caltech also argues that, contrary to Quigley's arguments, Caltech installed and maintained tires in the vans that were appropriate for the type of driving for which the van would be used, and that at no point had Quigley warned Caltech that the tire size could or would affect rollover potential.  Opp'n at 5.  Furthermore, Caltech argues that there is no evidence that any modifications made by Caltech increased the likelihood that the van would roll over at a low speed.  Opp'n at 5.

Quigley responds by noting that Caltech bears the burden of establishing a lack of good faith, and argues that Caltech has failed to so demonstrate. Reply at 7; see Tech-

---

[8] Furthermore, the Lee plaintiffs argue that "[i]f the jury determines that some aspect of the design of the vehicle is defective and contributed to plaintiffs' injuries, then Ford will share responsibility even in the absence of Quigley" and argue that "Caltech's motivation [for bringing this argument] appears to be based on its strategic decision not to file a cross-complaint against Ford."  Lee Reply at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx) <br> CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.* <br> *Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

Bilt, 38 Cal. 3d at 499-500 ("[t]he party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute").  Quigley argues that Caltech has not established that Quigley's conversion of the E-350 van renders Quigley liable. First, Quigley argues that the Brignola declaration's statements regarding the weight and center of gravity for an E-350 van without 4x4 conversion should be disregarded because they reflect a computer printout that was not independently verified by Brignola, and because they were calculated for a 15-passenger van, rather than the shorter 12-passenger van involved in the accident.  Reply at 10.  Quigley argues that while it is true that the Quigley 4x4 conversion does increase the 12-passenger van's center of gravity, this increase is well within the 48 inch vertical center of gravity limitation set by Ford; Quigley further argues that the increase in weight is within the Ford specifications. Declaration of Stephen Bartch (Quigley staff engineer) ¶ 4, 5.  Quigley further argues that "the Quigley axle conversion adds stiffness to the suspension which reduces body roll, which in turn helps to counter balance the modest rise in vertical center of gravity by dampening or mitigating body roll."  Reply at 11, citing Bartch Decl. ¶ 4.

Caltech, however, argues that further investigation is necessary in order to determine whether the additional height and weight caused by the 4x4 conversion contributed to the probability of roll-over and roof crushing, and that, because expert disclosures are not due until July 2, 2009, there is currently insufficient information on which to determine whether settlement approximates Quigley's liability.  Caltech notes that California courts have held that "the determination whether the settlement was in good faith must be based on competent, admissible evidence."  Brehm Communities v. Superior Court, 88 Cal.App.4th 730, 736 (2001); see also City of Grand Terrace v. Superior Court, 192 Cal.App.3d. 1251, 1263 ("the trial court's consideration of the settlement agreement and its relationship to the entire litigation in a contested setting must proceed upon a sufficient evidentiary basis to enable the court to consider and evaluate the various aspects of the settlement"); Mattco Forge, Inc. v. Arthur Young and Co., 38 Cal.App.4th 1337 (1995) ("[i]f there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion").  Caltech argues that there "is little in Quigley's motion that allows the court to make an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx) | Date | June 22, 2009 |
|----------|------------------------|------|---------------|
|          | CV 09-320 CAS (MANx)   |      |               |
| Title    | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

informed determination of either their proportional liability or the Plaintiff's probable recovery at trial." Opp'n at 10.

> While there is a declaration from Quigley's retained medical expert essentially shortening Plaintiff Lee's expected lifespan by over a decade, there is no evidence with respect to the economic considerations of the anticipated recovery should there be a jury award. Quigley has not put forward any evidence establishing its proportionate liability (except to claim that the seatbelts and other irrelevant considerations were to blame). Quigley did not even provide the Court with some general figures showing what Plaintiff's likely recovery at trial would be given its proportionate liability.

Opp'n at 11.[9]

Caltech also notes that courts have found that "when a joint tortfeasor enters into a disproportionately low settlement with the plaintiff solely to obtain immunity from the cross-complaint, the inference that the settlement was not made in good faith is difficult to avoid." Long Beach Memorial Medical Center v. Superior Court, 172 Cal.App.4th 865, 876 (2009), quoting Mattco Forge, Inc. v. Arthur Young & Co., 38 Cal.App.4th 1337, 1354 (1995). Caltech argues that "[i]t is clear that the most valuable aspect of this settlement is that it cuts off Caltech's cross-action for equitable indemnity against Quigley, which is many times greater than the settlement." Opp'n at 15, citing West v. Superior Court, 27 Cal.App.4th 1625, 1635 (1994) (finding that the trial court abused its discretion in finding that the settlement was made in good faith, because "[t]he true value

---

[9] Caltech also argues that the combined demands of Plaintiffs Hong and Lee against Caltech alone total $15 million, and that "there is little question that combined, the demand against all defendants is several tens of millions of dollars" and that, therefore, the settlement is disproportionately low. Opp'n at 4. Quigley, however, notes that "a plaintiff's claim for damages are not determinative in finding good faith. Rather, the court is called upon to make a 'rough approximation' of what the plaintiff would actually recover." West v. Superior Court, 27 Cal. App. 4th 1625, 1636 (1994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx) | Date | June 22, 2009 |
| --- | --- | --- | --- |
|  | CV 09-320 CAS (MANx) |  |  |
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.* |  |  |
|  | *Sang Mook Lee, et al. v. California Institute of Technology, et al.* |  |  |

in the 'settlement' to [defendant] was not the dismissal of the [plaintiffs'] claims as to them, claims as to which they had already prevailed on the summary judgment motion, but rather the dismissal of the indemnity claims of their clients based upon breach of [defendant's] duty to perform under the  listing agreement").[10]

　　In its supplemental brief, Quigley submits the declaration of Tom Fugger, a mechanical engineer who is Quigley's retained expert.  Fugger states that "a review of the manufacturing and test data from Quigley Motors establishes as a matter of reasonable engineering probability the Quigley conversion did not contribute to the roof crush and it

---

　　[10] Caltech further argues that under seal Exhibits D and E suggest a "collusive arrangement" between Ford and Quigley, and that the court "must consider the interplay of those proprietary agreements to the fairness of the settlement as to Caltech."  Mot. at 15.  The exhibits referenced by Caltech pertain to a "Ship-Thru Agreement" between Quigley and Ford, entered into on December 15, 1999.  The Ship-Thru Agreement provides, *inter alia*, that neither party shall file cross-claims or third party complaints against the other without notifying the other in advance, and that no party shall unilaterally enter into a settlement agreement without first notifying the other party. Caltech Ex. D (Ship-Thru Agreement).  Caltech argues that "[t]his court must consider the interplay of those proprietary agreements to the fairness of the settlement as to Caltech."  Opp'n at 15.  Quigley responds that the Ship-Thru Agreement was signed decades ago, and that "[t]hat Quigley and Ford agreed in writing years ago to resolve their differences outside the context of litigation involving cross-actions between the companies is neither unusual or conspiratorial."  Reply at 15.  Quigley also notes that Caltech has not filed a cross-claim against Ford in this matter.  Reply at 15.  Ford in its reply argues that Ford and Quigley have acted independently in this case, as evidenced by Quigley's settlement and Ford's remaining an active defendant in the case.  Ford Reply at 5.  Ford argues that there is nothing "in the ship-thru agreement to suggest an improper or collusive relationship between Ford and Quigley with respect to this case."  Ford Reply at 6. The Court agrees.  Although evidence of collusion between the settling parties will negate good faith, there is no such evidence here.  See N. County Contractor's Ass'n v. Touchstone Ins. Servs., 27 Cal. App. 4th 1085, 1089 ("good faith may be found only if there has been no collusion between the settling parties. . . ").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

did not contribute to the loss of control or roll over in this accident." Fugger Decl. ¶ 4. First, Fugger states that "[t]he argument that the addition of 332 lbs. due to the Quigley conversion contributed to the roof crush is fallacious because Cal-Tech made modifications to the vehicle which resulted in a decrease in the relative weight of the vehicle which more than offset the 332 lbs. increase." Fugger Decl. ¶ 5. Fugger further states that he has observed Quigley-modified vans driven at moderate speed through similar roads where the accident occurred, and observed that "[t]he driver was able to negotiate this stretch of road without the sort of yaw, pitch or roll associated with a roll-over event or associated with a potential or near roll-over event." Fugger Decl. ¶ 7. Fugger disputes the declaration submitted by Brignola, finding that it failed to consider that while Quigley's conversion raised the center of gravity on the van 2.49 inches, Caltech's vehicle modifications raised the center of gravity a further 1.15 inches. Fugger ¶ 7. Furthermore, Fugger states that "as a matter of reasonable engineering probability, the vertical center of gravity of this van had nothing to do with this van turning over." Fugger ¶ 8. Fugger states that "the issue in this accident sequence was what initially causes the rear end of the van to go into the soft shoulder on the outside of the right hand curve of the road" and that there are three possible answers: (1) excessive speed and/or too wide an angle of entry into the curve; (2) the left rear of the van going into the soft shoulder due to driver inattentiveness; or (3) loss of control due to primary collision between the van driven by Choi and the van driven by Lee (i.e. the "pit maneuver" theory). Fugger Decl. ¶10. Quigley argues that all of these theories point to the failure of Caltech to properly train and supervise the drivers of Caltech's vans, as well as Caltech's failure to account for driver fatigue by providing relief drivers  Sup. Br. at 4.  Quigley argues that the "potential liability of Quigley and Ford is minimal to non-existent . . ." Sup. Br. at 4.

Quigley further argues that the weight of evidence establishes that Professor Lee was engaged in a joint enterprise with Caltech in the conduct of the field trip, and therefore, to the extent that Professor's Lee's driving skill is at issue, it is imputed to Caltech, because any act or omission by one engaged in an enterprise is imputed to the members of the enterprise.  Sup. Br. at 5, citing Shook v. Beals, 96 Cal.App.2d 963. Quigley further argues that the same analysis applies to the Republic of Korea.

Caltech counters that Quigley's theory of a collision between Choi and Lee is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|----------|-----------------------------------------------|------|---------------|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

"complete fabrication," arguin
g that none of the witnesses to the accident ever testified that the Choi van caused the Lee van to roll. Sup. Opp'n at 2. Caltech further argues that Choi and his passenger have testified that Choi's van collided with Lee's van only after it had already overturned. Sup. Opp'n at 4; Choi Decl. ¶¶ 9-15.

Caltech also argues that Quigley's arguments regarding the Caltech modifications to the tires are unavailing, because (1) the tires added less height to the vehicle than Quigley's modification; and (2) the potentially harmful effects of adding larger tires were insufficiently detailed in Quigley's warranty. Sup. Opp'n at 5, citing Quigley Warranty ("Tires larger than OEM may adversely affect the safety and handling of the vehicle and will have a tendency to cause DANGEROUS vibration, shimmy, etc").

The Court finds that, on balance, Caltech has not met its burden of establishing that the settlement is so far "out of the ballpark" so as to be inconsistent with the equitable objectives of the statute. See Tech-Bilt, 38 Cal. 3d at 499-500. Caltech has failed to set forth sufficient evidence that would demonstrate that Quigley's liability exceeds the settlement award, and much of the evidence that Caltech has been set forward has been reasonably disputed with contradicting evidence by Quigley. Furthermore, even assuming that there is no evidence to support Quigley's pit maneuver theory, Quigley has presented evidence indicating that Caltech and/or Professor Lee may bear a significant amount of responsibility for the accident. Therefore, the Court cannot conclude that Quigley's settlement is so far out of the ballpark so as to render a finding of good faith inappropriate.

**B.      Allocation of the Settlement**

In addition, Caltech argues that there is no evidence by which the Court may make an informed and reasonable determination of the "allocation of the settlement with respect to economic and noneconomic damages." Opp'n at 12. Caltech argues that it is problematic that Quigley has not indicated what proportion of the settlement is attributable to economic damages versus non-economic damages, given that under California law, a nonsettling party is entitled to set-off for the portion of the settlement which represent economic damages, but not for non-economic damages. In re Piper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|----------|------------------------------------------------|------|---------------|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

<u>Aircraft</u>, 792 F. Supp. 1189, 1192 (N.D. Cal. 1992).  However, Caltech's argument is unavailing, as the settling parties are not required to allocate the settlement between economic and non-economic damages. <u>See</u> <u>Jones v. John Crane, Inc.</u>, 132 Cal.App.4th 990, 1010 (2005) ("[W]here an allocation is made of settlement proceeds which will affect the ultimate setoff or credit that a nonsettling defendant will receive against any future judgment, the allocation may not be given presumptive effect unless it was the product of adverse negotiation. . . Ordinarily settling defendants … are not in an adversarial position with plaintiffs as to the allocation of settlement proceeds to separate causes of action"); Justice Zerne P. Haning (Ret.) et al., <u>California Practice Guide: Personal Injury</u> 4:185.22a (The Rutter Group 2008) ("[e]ven if a § 877.6 'good faith' certification is obtained, the nonsettling parties should have the right to argue fault apportionment anew before the jury, whose decision in factual matters should not be usurped by the setting parties").[11]

### C.    Quigley's Financial Condition

        Caltech further argues that Quigley has not provided any evidence of its financial condition, nor any evidence of its insurance or coverage limits, so that the Court can adequately assess the fairness of the settlement, Opp'n at 14, citing <u>Mattco Forge</u>, 38 Cal.App.4th at 1352 ("even where the claimant's damages are obviously great, and the liability therefore certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor"). Caltech argues that Quigley's settlement is disproportionately low, and that Quigley has provided no evidence of its financial condition that would justify this.  Opp'n at 14.

        Quigley, notes that it responded on September 2, 2008 to Hong's interrogatory 4.1 by providing proof of its $5,000,000 of coverage through a commercial excess liability policy with Travelers Property Casualty Company of America.  Reply at 10.  With its

---

        [11] The Lee plaintiffs in reply also argue that "the total value of economic damages is likely to be less than $5 million, based upon the evidence available to date.  It is this number that must be used to assess the reasonableness of the proposed settlement because Caltech is not entitled to indemnity, offset or contribution from Quigley for its own share of non-economic damages."  Lee Reply at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx)<br>CV 09-320 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.*<br>*Sang Mook Lee, et al. v. California Institute of Technology, et al.* | | |

supplemental brief, Quigley submits the further declaration of Michael Quigley, president of Quigley Motor Company.  In this declaration, Michael Quigley states that Quigley "has experienced a steady decline in its orders commencing in the late fall of 2008" that it has cut back the number of hours of its plant and office staff, and that it has laid off three employees at the end of last month and is scheduled to lay off more staff at the end of this month.  Quigley Decl. ¶ 3-4.  Michael Quigley states that "[i]f the present trend continues, Quigley will be out of business by the fall of this year."  Quigley Decl.  ¶ 3-4.  The declaration further affirms that the only insurance Quigley carries that provides coverage for the Lee and Hong losses is the Travelers policy, which includes an umbrella policy for $5,000,000 and product liability coverage with limits of $1,000,0000 per occurrence and $2,000,000 in the aggregate.  Quigley Decl. ¶ 5.  Michael Quigley states that one other accident occurred in the relevant policy year and that that matter is also currently in litigation.  Quigley Decl. ¶ 5.  Quigley also submits a statement of assets and liabilities, which indicates that Quigley's total assets are $2,519,394, current liabilities are $81,806, long term debt is $1,020,000, and stock holder equity is $2,519,394.

Caletch argues that [t]he pressing question is why only 15.8% of Quigley's available insurance coverage is going towards the settlement.  There is no justification, evidence, or explanation for why the remaining $5 million on its policy is not available."  Sup. Opp'n at 3.  However, Caltech presents no authority suggesting that a settling defendant is required to use a certain threshold percentage of its insurance coverage on a settlement.  Instead, the settlement must only be in the ballpark of the settling defendant's liability.  Because the Court finds herein that the settlement amount is in the ballpark, Caltech's arguments regarding the remainder of the insurance policy are unavailing.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Quigley's motion for good faith settlement.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5790 CAS (MANx) | Date | June 22, 2009 |
|---|---|---|---|
| | CV 09-320 CAS (MANx) | | |

| Title | *Seung Suk Hong, et al. v. Sang Mook Lee, et al.* |
|---|---|
| | *Sang Mook Lee, et al. v. California Institute of Technology, et al.* |

|  | 00 | : | 01 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |